IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge R. Brooke Jackson

Criminal Case No. 14-cr-00448-RBJ-1
Civil Case No. 19-cv-00047-RBJ

UNITED STATES OF AMERICA,

      Plaintiff,

v.

HAROLD HENTHORN,

      Defendant.

---

### ORDER ON DEFENDANT'S MOTION TO VACATE AND THE GOVERNMENT'S MOTION TO STRIKE

---

      This is before the Court on defendant Harold Henthorn's motion to vacate his sentence pursuant to 28 U.S.C. § 2255 (ECF No. 153) and the government's motion to strike portions of defendant's supplemental motion to vacate (ECF No. 171). For the reasons below, the defendant's motion is DENIED, and the government's motion is GRANTED in part.

## I.    BACKGROUND

      In 2012, Toni Henthorn, defendant Harold Henthorn's second wife, fell to her death in Rocky Mountain National Park. Mr. Henthorn was indicted for first-degree murder and retained a defense team: Mr. Truman, Mr. Maximon, and Mr. Neuwirth. Mr. Truman is the main subject of Mr. Henthorn's complaints.

      Before trial, there was significant litigation on whether it would be appropriate to admit evidence of several past incidents as 404(b) evidence. One incident that this Court permitted as evidence was the death of Mr. Henthorn's first wife, Lynn Henthorn. Lynn Henthorn died from

injuries sustained when she and Mr. Henthorn were changing the tire on their car, and the car fell on top of her.  The Court also permitted evidence of an incident when Toni Henthorn was injured when Mr. Henthorn threw a piece of lumber over the side of the deck at their vacation home. The wood struck Toni in the back of the head.  Mr. Henthorn has made clear that he is not challenging these in limine decisions in the instant motion.

At trial, Mr. Truman inquired of jurors during voir dire, gave the opening statement, performed many of the cross examinations, and gave the closing argument.  The defense did not put on any witnesses.  Ultimately the jury returned a guilty verdict, and the Court sentenced Mr. Henthorn to serve a life imprisonment without the possibility of parole.  *See* ECF No. 122.

On January 8, 2019, Mr. Henthorn filed the instant motion (original motion) to vacate the judgment against him and for a new trial, alleging that his trial counsel had been ineffective. ECF No. 153.  That motion was written and filed pro se.  *Id.*  In the original motion, Mr. Henthorn complained that Mr. Truman had told him he was preparing a strong defense, and that he only learned mid-trial that Mr. Truman did not intend to put on any witnesses.  *Id.* at 6–7.  Mr. Henthorn claimed that he had believed that Mr. Truman did intend to put on witnesses because Mr. Truman had requested additional funds from Mr. Henthorn to retain expert witnesses.  *Id.* The allegation underlying these complaints is that Mr. Truman did not prepare for trial.[1]  The Court ordered that the government respond to the motion, and on receipt of that response set the motion for a hearing.  ECF Nos. 154, 156.

The government requested that the Court appoint counsel to represent Mr. Henthorn at the hearing, and the Court granted that motion.  ECF Nos. 157, 158.  On November 11, 2020,

---

[1] Mr. Henthorn also briefly complained that Mr. Truman did not permit him to participate in his own defense at trial because he told Mr. Henthorn not to speak to him during trial and did not provide him with a working pen so that he could make notes.  ECF No. 153 at 10.

Mr. Henthorn's hearing counsel, Mr. Chambers, moved for leave to file a supplemental motion, over fifty pages long, which the Court granted. The supplemental motion was filed outside the one-year statute of limitations for original filings under 28 U.S.C. § 2255. In that motion, the complaints were much more specific than the complaints in the original motion, referring to instances throughout the trial where Mr. Henthorn believed Mr. Truman's performance was deficient. The supplemental motion identified twelve categories of alleged deficiencies. The government responded that the Court did not have jurisdiction over any category in the supplemental motion except for Category 8 and moved to strike the remaining eleven categories. ECF No. 171.

The Court held a three-day hearing on Mr. Henthorn's motion to vacate beginning May 23, 2022. Mr. Henthorn presented expert testimony from Mr. Robert Pepin regarding Mr. Truman's performance. The government presented the testimony of Mr. Truman, who explained why he had made certain decisions.

## II.    JURISDICTION OVER THE SUPPLEMENTAL MOTION TO VACATE[2]

### A.  <u>**Standard of Review**</u>

Amendments to motions under 28 U.S.C. § 2255 are governed by Fed. R. Civ. P. 15. Amendments must be filed within the one-year limitations period to be considered timely. *See* 28 U.S.C. § 2255(f). When a defendant attempts to amend his original motion under § 2255 outside the one-year period advancing a new argument or theory that does not relate back to the

---

[2] To the extent that Mr. Henthorn argued at the evidentiary hearing that the Court already decided this issue by failing to rule on denying the government's motion to strike the supplemental motion before the hearing, he is wrong. The government's motion was included in its response to the motion to vacate (contrary to D.C.COLO.LCivR 7.1(d) and D.C.COLO.LCrimR 12.2.). ECF No. 171. Nevertheless, Mr. Henthorn filed a reply to the response, ECF No. 174, and the Court set a hearing on both motions. *See* ECF No. 175. The Court heard arguments on the motion to vacate during the hearing, and it is ruling on both motions in this order.

original motion, the Court will not have jurisdiction over that claim.  *See United States v. Roe*, 913 F.3d 1285, 1299–1300 (10th Cir. 2019).  An untimely amendment to a § 2255 motion may be permitted where the amendment adds facts, clarifies, or amplifies a claim in the original motion, and "the proposed amendment does not seek to add a new claim or to insert a new theory into the case."  *United States v. Espinoza-Saenz*, 235 F.3d 501, 505 (10th Cir. 2000) (citing *United States v. Thomas*, 221 F.3d 430, 431 (3d Cir. 2000)).

The operative question for whether an amended motion "relates back" pursuant to Rule 15(c)(1)(B) is whether the original and amended motions state claims that are "tied to a common core of operative facts."  *Roe*, 913 F.3d at 1298.  In making that determination, courts should consider whether the new claim is "supported by facts that differ in both time and type" from those in the original petition.  *Mayle v. Felix*, 545 U.S. 644, 645 (2005).

**B. <u>Analysis</u>**

As I indicated at the evidentiary hearing, I do not find this procedural issue to be as simple as the parties do.  The government was adamant in its arguments to the Court that the supplemental motion does not relate back to the original motion; and that, as a result, this Court lacks jurisdiction to consider any of the supplemental motion except supplemental issue eight. *See* ECF No. 171 at 1.  Mr. Henthorn was equally adamant in his arguments to the Court that each issue in the supplemental motion relates back to the original motion, and this Court has jurisdiction over every supplemental issue.

Each issue raised in the supplement deserves meaningful analysis on the question of relation back and jurisdiction.  Mr. Henthorn's original motion was pro se.  While pro se litigants are required to plead sufficiently specific facts, "[a] document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent

standards than formal pleadings drafted by lawyers." *United States v. Trent*, 884 F.3d 985, 993 (10th Cir. 2018).

The original motion was shorter than the supplemental motion and focused primarily on the claim that trial counsel told Mr. Henthorn that he was preparing and would present a solid defense for Mr. Henthorn at trial, including expert witnesses. *See* ECF No. 153. Specifically, Mr. Henthorn argues that he transferred money to Mr. Truman pretrial that was intended to be used to retain expert witnesses but was instead used to enrich Mr. Truman. *Id.* at 6–7.

These arguments are not the focus of the supplemental motion. Rather, Mr. Henthorn's counsel identified a myriad of perceived deficiencies in Mr. Truman's trial performance. *See* ECF No. 167. These deficiencies were sorted into twelve categories, which I will address in turn.

    1.  <u>Category 1: Failure to Object to Irrelevant and Prejudicial Evidence</u>

The Court concludes that it does not have jurisdiction over this category. There is an argument that this category of failures to object is different than Categories 2 and 3, which also deal with failures to object. What might set failures to object on these grounds apart is the fact that a lack of preparation might make it more difficult to ascertain what evidence is relevant or prejudicial in time to make an objection.

However, Mr. Henthorn's hearing counsel, Mr. Chambers, directly disavowed this argument. The Court asked whether Mr. Henthorn's theory of relation back was that without preparation, Mr. Truman would not have known what was relevant or irrelevant to object to. Mr. Chambers indicated that this was not Mr. Henthorn's theory, and that it should have been clear to Mr. Truman in most cases during the trial what was relevant or irrelevant regardless of preparation. The same response applies equally on the question of prejudice. As these failures

to object do not relate back to the original complaint of failure to prepare, this Court does not have jurisdiction over Mr. Truman's failures to object contemporaneously on these grounds.

2. Category 2: Failure to Object to Hearsay, Lack of Personal Knowledge, and Violations of the Confrontation Clause

This category does not relate back to the original motion. There is no mention in the original motion of any failure to object on these grounds. *See* ECF No. 143 at 6–11. Unlike Category 1, there is no colorable argument that the failures to make these types of objections is evidence of any failure to prepare a defense. Counsel does not need to be familiar with the case to identify and object to hearsay or instances where a witness lacks personal knowledge. Those problems will be clear, for the most part, as they arise. The same is true for violations of the confrontation clause. As this complaint does not arise from the common nucleus of operative fact with the original motion, the Court lacks jurisdiction over this category.

3. Category 3: Failure to Object to Improper Opinion Evidence

This Court lacks jurisdiction over this category. It is like Category 2: there is no way to connect it back to any of Mr. Henthorn's complaints in the original motion. While some of these objections might have been anticipated during preparation for trial, they will only become objectionable as they occur. Mr. Henthorn did not complain specifically of these failures in the original motion, and this alleged failure cannot be said to be evidence of any failure to prepare— a lawyer who is unprepared or underprepared for a case could still identify improper opinion evidence as it arises.

4. Category 4: Failure to Object to Detective Weaver's Reenactments and Failure to Effectively Cross Examine Detective Weaver

The failure to object in limine or contemporaneously to evidence of Detective Weaver's reenactments does not share a common core of operative facts with the complaints in the original

6

motion.  Mr. Henthorn did not specifically mention it in his original motion.  Mr. Truman's choice not to object to the reenactments does not seem to emanate from a lack of preparation. There are lots of reasons not to object to evidence unrelated to preparation, and in the supplemental motion, Mr. Henthorn does not suggest that the failure stemmed from a lack of preparation.  There is no reason to believe that this alleged failure is related to any failure of preparation and the Court does not have jurisdiction over the portion of Category 4 focused on the reenactment evidence.

However, there is a common core of operative fact between the original motion and the assertion in Category 4 of the supplemental motion that Mr. Truman did not effectively cross examine Detective Weaver.  An ineffective cross examination is much more likely to be evidence of a lack of preparation than a failure to object would be—a failure to object will often have a strategic purpose, where an ineffective cross examination could have none.  There is a link between the original motion and this portion of Category 4: this allegedly ineffective cross examination could be evidence of Mr. Truman's alleged failure to prepare a defense.  The Court has jurisdiction to consider the merits of those allegations.

   5.   Category 5: Failure to Object to Improper Prosecutor Questioning

This category suffers from the same fatal jurisdictional problem as the others discussed previously: even reading the original motion liberally, there is no factual nexus between this category and the failures complained of in the original motion.  A failure to prepare would not have prevented a lawyer from being able to identify instances of inappropriate questioning by the prosecution and to object to those questions as they arose.

An example given in the supplemental motion of improper questioning illustrates this point.  During the direct examination of Mr. Gunderson, a coroner investigator, a prosecutor

asked if he was "aware that the information received by the National Park Service included nothing about the first wife's *murder*." ECF No. 140 at 181 (emphasis added). I agree that the prosecution's classification of Lynn Henthorn's death as "murder" was improper, and Mr. Truman admitted during the hearing that, in retrospect, it was a question to which he should have objected. However, it is not a question that Mr. Truman could have prepared for—there was no way to know the prosecutor would ask that question in advance. This category cannot be linked back to Mr. Henthorn's overarching complaint in the original motion that Mr. Truman was unprepared for trial.

    6.  Category 6: Failure to Inquire of Potential Jurors during Voir Dire

Mr. Henthorn does not complain of Mr. Truman's performance during voir dire in the original motion. However, there are two types of failures regarding jury selection alleged by Mr. Henthorn in the supplemental motion. First, Mr. Henthorn complains that Mr. Truman did not propose any questions for the jury questionnaire. Second, he complains that Mr. Truman failed to inquire about several pertinent and important subjects.

On the first issue, the Court does have jurisdiction. The failure to propose any questions for the juror questionnaire has a factual nexus to the original motion. Proposing questions for a juror questionnaire is part of the preparation of a case, and the failure to propose questions raises at least some inference of a lack of preparation. While there may be many legitimate reasons that defense counsel might choose not to propose questions for the jury questionnaire, that is an issue on the merits of the motion to vacate, not for this jurisdictional issue. I will consider the merits of this alleged deficiency, but only as it relates back to Mr. Henthorn's claim in the original motion that Mr. Truman failed to prepare a defense.

The specific topics that Mr. Henthorn insists should have been raised during voir dire do not give rise to any inference that Mr. Truman did not prepare a defense.  Perhaps had Mr. Truman failed to inquire of the jurors at all, there could be such an inference, but that is not the case.  He asked several questions of prospective jurors.  Many different questions might be asked in voir dire, on many different subjects in any given case.  Though preparation should be done for voir dire, it is driven, at least in part, by the answers given by jurors.  The failure to ask whether jurors had any experience changing tires or emergency medical experience does not establish lack of preparation; rather it is something Mr. Henthorn's counsel and expert have identified as something they believe Mr. Truman should have done differently.  There is no factual nexus between Mr. Henthorn's assertion in his original motion that Mr. Truman failed to prepare a defense and this complaint from the supplemental motion.

7.  Category 7: Introduction of Prejudicial Evidence by Defense Counsel

There is no factual nexus between this category and the original motion.  There is no reason to believe that the introduction of the evidence complained of relates back to Mr. Henthorn's complaint in the original motion that Mr. Truman failed to prepare a defense.  The presentation of this evidence via cross examination cannot be evidence that Mr. Truman failed to present a defense—it is evidence of his putting on a defense.  That Mr. Henthorn now does not like the defense that Mr. Truman put on has nothing to do with Mr. Henthorn's complaint in the original motion that Mr. Truman did not prepare a defense.  As this category does not relate back to the original motion, the Court does not have jurisdiction over this category.

8. Category 8: Failure to Introduce Evidence that would have Rebutted the Government's Case

As discussed at the evidentiary hearing, both parties agree that this category relates back to the original motion. I agree. The Court has jurisdiction and will consider this complaint on the merits.

9. Category 9: Counsel Represented that Certain Evidence Would Come In During Opening Statements that did not

This category relates back to Mr. Henthorn's original motion. Representing that evidence would come in, when in fact, evidence to the contrary came in, could show a lack of preparation. Generally, lawyers prepare their opening statements in advance of trial and are careful to limit those statements to evidence that they know will come into evidence. Further, Mr. Henthorn argues that Mr. Truman's unfamiliarity with important discovery was the cause of these misstatements in the opening statement. While there could be reasons other than lack of preparation that could account for this alleged error, a possible reason would be lack of preparation. The Court has jurisdiction over this category.

10. Category 10: Mishandling of Jury Instructions

This category does not relate back to Mr. Henthorn's original motion. Mr. Henthorn complains of two errors: first, that Mr. Truman failed to request contemporaneous jury instructions every time a witness testified about evidence that had been subject to the pretrial 404(b) litigation; second, that Mr. Truman did not request a jury instruction on prior inconsistent statements even though he had attempted to impeach Ms. Montoya using her prior inconsistent statements. *See* ECF No. 167 at 38.

The failure to repeat a request for a contemporaneous instruction each time the 404(b) evidence was referenced is not a failure of preparation, nor does Mr. Henthorn argue that it is in his supplemental motion. In fact, had Mr. Truman been unprepared to make such a request, he

would never have requested that instruction—however, he requested the jury receive that instruction on two occasions. *See* ECF No. 142 at 105–6, 231.

The failure to request a jury instruction on prior inconsistent statements is likewise unrelated to Mr. Truman's preparation. His decision at trial not to request that instruction has no common core of operative facts with his preparation for trial. As neither of these alleged errors can be evidence of Mr. Truman's failure to prepare a defense, the Court does not have jurisdiction over it.

11. Category 11: Failure to Object to Inappropriate Prosecutor Statements during the Government's Closing Argument

Mr. Henthorn's complaint of Mr. Truman's failure to object to inappropriate statements by the prosecutor during the rebuttal closing argument does not relate back to Mr. Henthorn's original motion. Mr. Truman could have had no idea what the prosecutors might say during their closing argument—there was no way for Mr. Truman to prepare to object to statements that he did not know were coming. There is no common core of operative facts linking this category to Mr. Henthorn's original motion and the Court does not have jurisdiction over this complaint.

12. Category 12: Derogatory Statements made by Trial Counsel About Mr. Henthorn

This category also does not relate back to Mr. Henthorn's original motion. This complaint does not stem from a lack of preparation. Though Mr. Henthorn might have preferred trial counsel to speak glowingly of him, Mr. Truman's statements about Mr. Henthorn's well-documented tendency to tell stories differently on different occasions evinces preparation and familiarity with the case. As this category bears no relationship to Mr. Henthorn's complaint in the original motion that Mr. Truman did not prepare a defense, this Court does not have jurisdiction to consider it.

### C. **Conclusion**

The government's motion to strike (ECF No. 171) is granted as to Categories 1, 2, 3, 5, 7, 10, 11, and 12 due to lack of jurisdiction.  It is granted as to the complaint in Category 4 that Mr. Truman failed to object in limine or contemporaneously to the introduction of evidence on Detective Weaver's reenactments.  It is granted as to the complaint in Category 6 that Mr. Truman failed to ask questions on specific topics during jury selection.

The Court finds that it has jurisdiction over Categories 8 and 9 and the remaining portions of Categories 4 and 6.  The government's motion is denied as to those categories.

## III.   INEFFECTIVE ASSISTANCE OF COUNSEL

### A. **Standard of Review**

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."  U.S. CONST. amend. VI.  "The right to counsel is the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686–87 (1984).  To establish ineffective assistance of counsel, the movant must show (1) that counsel's performance was deficient and (2) that the defense was prejudiced by that deficient performance.  *See Smith v. Duckworth*, 824 F.3d 1233, 1249 (10th Cir. 2016) (citing *Strickland*, 466 U.S. at 687).  Courts may address the performance and prejudice components in any order but need not address both if the defendant fails to make a sufficient showing of one.  *Cooks v. Ward*, 165 F.3d 1283, 1292–93 (10th Cir. 1998).  There is a strong presumption against finding that counsel is ineffective.  *United States v. Clonts*, 966 F.2d 1366, 1370 (10th Cir. 1992).

To show that counsel's performance was deficient, the movant must show that counsel's representation fell below an objective standard of reasonableness.  *Strickland*, 466 U.S. at 669.

Counsel's representation falls below an objective standard of reasonableness when it amounted to incompetence under prevailing professional norms; not when it deviates from best practices or most common custom. *Strickland*, 466 at 687.

Counsel's performance falls below an objective standard of reasonableness if counsel's actions have no strategic purposes. *See Boyd v. Ward*, 179 F.3d 904, 918 (10th Cir. 1999) (explaining that "[f]ailure to present mitigating evidence is not ineffective assistance of counsel . . . [I]t can constitute ineffectiveness if the failure was not done due to a tactical decision."); *Fisher v. Gibson*, 282 F.3d 1283, 1291 (10th Cir. 2002). In determining whether counsel's practices were not sound strategy, an evidentiary hearing is needed to develop the thoroughness of counsel's investigation, preparation, and basis of their decisions. *United States v. Holder*, 410 F.3d 651, 656 (10th Cir. 2005).

"Where it is shown that a particular decision was . . . an adequately informed strategic choice, the presumption that the attorney's decision was objectively reasonable becomes virtually unchallengeable." *Bullock v. Carver*, 297 F.3d 1036, 1046 (10th Cir. 2002) (internal quotation omitted). However, where counsel's fully informed strategic choice is "so patently unreasonable that no competent attorney would have made it," counsel's performance may still be considered deficient. *Id*. (quoting *Phoenix v. Matesanz*, 233 F.3d 77, 82 n. 2 (1st Cir. 2000).

To establish that the movant suffered prejudice, he must identify acts or omissions made by the attorney that resulted in prejudice. *Strickland*, 466 U.S. at 690. Specifically, the movant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Lafler v. Cooper*, 566 U.S. 156, 163 (2012). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694. Courts have aggregated errors made by counsel to determine

whether their cumulative effect on the outcome of the trial is such that they can collectively no longer be determined to be harmless. *Cargle v. Mullin*, 317 F.3d 1196, 1207 (10th Cir. 2003) (citing *United States v. Toles*, 297 F.3d 959, 972 (10th Cir. 2002)).

**B.** **Analysis**

1. Failure to Prepare a Defense as Alleged in the Original Motion

As I stated at the hearing, it was Mr. Henthorn's assertion that Mr. Truman had told him that he had never prepared a defense for him and had "sold [him] down the river" that caused me to grant his request for an evidentiary hearing. ECF No. 153 at 10. Having heard the evidence, this claim is incredible and lacks any semblance of merit.

It was clear from Mr. Truman's testimony, which the Court finds was credible, that he did extensive preparation for Mr. Henthorn's trial. He spoke about the many meetings he had with Mr. Henthorn both before and after the indictment. He discussed the process by which the defense team, including Mr. Henthorn, made the difficult decision as to whether to put on evidence. He discussed the many conversations he and the rest of the defense team had with Mr. Henthorn to advise him on whether he should exercise his right to testify. Mr. Truman explained why he did not present any expert to testify at trial and the thought and preparation that went into that decision.

Mr. Henthorn's only evidence that Mr. Truman was not prepared are the instances outlined in the supplemental motion and not stricken because of the jurisdictional issue. These instances could be circumstantial evidence of lack of preparation—however, there are explanations other than lack of preparation for the choices made in these instances. As Mr. Truman explained, those instances reflect strategic choices and not poor preparation. I will address each of the categories outlined in the supplemental motion—none of the categories

14

provides evidence that Mr. Truman failed to prepare a defense, and none shows deficient performance.

        a.   <u>Category 4: Failure to Effectively Cross Examine Detective Weaver</u>

Mr. Henthorn has not shown that Mr. Truman's performance was deficient for failing to cross examine Detective Weaver effectively. Mr. Henthorn complained in his supplemental motion that Mr. Truman neglected to question Detective Weaver about various photographs taken at the scene of Lynn Henthorn's death, as well as failing to use photographs and videos taken during the reenactments to show the weaknesses in the reenactments. *See* ECF No. 167 at 30.

Both alleged deficiencies are strategic decisions and thus entitled to significant deference. As a preliminary note, having refreshed my memory by reviewing the transcript of the cross examination of Detective Weaver, I find that it was indeed effective. I cannot say that Mr. Truman's choice not to use photographs from the scene of Lynn Henthorn's death or photos and videos taken during the reenactments was so unreasonable that no competent counsel would have made those choices. Had Mr. Truman made the strategic decision not to challenge the reenactments at all during his cross examination of Detective Weaver that might have been sufficiently unreasonable to constitute deficient performance. However, there were many ways in which to discredit these reenactments, and Mr. Truman did discredit the reenactments and did so persuasively.

He began by inquiring into Detective Weaver's background and experience in conducting this type of reenactment. ECF No. 144 at 3–6. It quickly became clear that Detective Weaver had no scientific or experimental education or experience. *Id*. Mr. Truman then inquired into the resources that Detective Weaver could have used or reached out to that did have scientific or

experimental experience.  *Id*. at 9–13.  Mr. Truman questioned Detective Weaver on the differences in circumstances between the accident scene and the reenactments.  *Id*. at 14–29. There is no reason to believe that Mr. Truman's approach to the cross examination of Detective Weaver was not a well-informed strategic choice.  Mr. Truman demonstrated mastery of the facts surrounding the reenactments during that cross examination.

Mr. Truman could have discredited the reenactments in the way proposed by Mr. Henthorn in his supplemental motion, by using photos from the accident scene and photos and videos from the reenactment to show that the reenactments did not accurately represent what occurred at the accident scene.  However, without using any of those photos, Mr. Truman was able to achieve the same result with his cross examination—it was clear from Detective Weaver's answers on cross that there were many circumstances from the accident scene that he was unable to replicate for reenactment purposes.  Mr. Truman's performance in his cross examination of Detective Weaver was not deficient and it does not show that Mr. Truman did not prepare a defense.

b.   <u>Category 6: Failure to Offer Questions on the Jury Questionnaire</u>

Mr. Henthorn has not shown that Mr. Truman's performance was deficient due to his failure to offer questions on the jury questionnaire.  The crux of this complaint from the supplemental motion, fleshed out at the evidentiary hearing, is that Mr. Truman failed to propose a question about the circumstances surrounding Lynn Henthorn's death, which would have put the issue on the table for jurors to consider earlier and allowed him to determine whether any jurors had bias specifically related to that accident.

Mr. Truman testified at the evidentiary hearing that this was a strategic decision—he testified that he generally only agrees to questionnaires when there is a significant issue of

publicity or significant issues of sexual assault.  Here, he agreed to a questionnaire.  But he has found in his practice that asking case-specific questions on jury questionnaires puts up unnecessary barriers between the questioning lawyers and the potential jurors.  He testified that his goal in voir dire is to be open-minded and listen to potential jurors' answers and observe their behavior while they answer how they think and feel about certain things in their own lives.  In making those observations, he finds that he is better able to determine how jurors might think or feel about the case he is trying.  Based on this testimony, Mr. Truman's choice not to include questions regarding Lynn Henthorn's death was a fully-informed strategic one entitled to significant deference.

Analyzing that decision with that deference in mind, a competent lawyer could have made such a strategic decision.  While some lawyers might want to get the information about Lynn's death to potential jurors up front, it is not patently unreasonable to choose to hold that information back when picking a jury.  I credit Mr. Pepin's expert opinion that the voir dire method of "deselection" is the primary method used by defense counsel currently.  However, I cannot say that no competent lawyer would use the method of selection or deselection that Mr. Truman used.  Mr. Truman's performance was not deficient for his failure to include questions regarding Lynn Henthorn's death on the jury questionnaire, nor does that failure show that Mr. Truman did not prepare a defense.

c.   Category 8:

In his supplemental motion, Mr. Henthorn contends that Mr. Truman provided ineffective assistance because he failed to introduce evidence to rebut Detective Weaver's reenactments, which supported the government's theory of Lynn Henthorn's death.  *See* ECF No. 167 at 35. During the evidentiary hearing, Mr. Henthorn introduced exhibits that established that Detective

Weaver's reenactments did not use the same model vehicle; the same type of jack; the same type of road surface; and they did not reflect the conditions of the night Lynn Henthorn died.

Mr. Schippel was an emergency medical technician with the West Douglas County volunteer fire department when he responded to the scene where Lynn Henthorn was crushed under a vehicle. At the hearing on the 404(b) evidence, Mr. Schippel testified about his personal experience with a jack failing when placed on a cement paver, mirroring the circumstances of Lynn Henthorn's death. Mr. Truman testified that Mr. Schippel indicated to him that he did not want to testify at trial and would not necessarily be a favorable witness.

At the evidentiary hearing, Mr. Truman said that his philosophy is not to call any more witnesses than necessary because when the defense puts on just one or two witnesses, in his experience, juries subconsciously shift the burden of proof to the defense. Additionally, Mr. Truman stated that although there were discrepancies between the accident and the reenactments done by Detective Weaver, Mr. Truman believed that Detective Weaver was defense-favorable. He testified that his decision not to call Mr. Schippel was strategic.

Mr. Truman's performance was not deficient—reasonable counsel could have chosen to deal with Detective Weaver's testimony with cross examination rather than by calling additional witnesses. The reenactments were discredited by Mr. Truman's cross examination of Detective Weaver.

Lastly, although Mr. Pepin gave expert testimony during the evidentiary hearing that the choice not to call witnesses was deficient, "advocacy is an art and not a science, and because the adversary system requires deference to counsel's informed decisions, strategic choices must be respected in these circumstances if they are based on professional judgment." *Strickland*, 466

U.S. at 681.  The Court cannot find that the failure to call Mr. Schippel was a decision that no reasonable lawyer would have made.

Mr. Henthorn also contends that Mr. Truman was deficient because he failed to elicit testimony from Detectives McMahan and Weaver to impeach the testimony of Ms. Montoya. ECF No. 167 at 35–36.  However, this argument essentially contradicts another argument made in the supplemental motion.  Mr. Henthorn claimed in Category 10 that Mr. Truman was deficient for failing to request a jury instruction on prior inconsistent statements because it *had been shown* that Ms. Montoya had made prior statements inconsistent with her testimony at trial.

On review of the record, I agree that Ms. Montoya was impeached by prior inconsistent statements on her cross examination.  It was clear that she had made statements to Detective Weaver in a recorded interview that did not reflect things she had testified about.  *See* ECF No. 142 at 285–87.  Mr. Truman was not deficient for failing to elicit evidence from Detectives McMahan and Weaver when he had already impeached Ms. Montoya during her cross examination.  It was a strategic choice entitled to deference, and I find that a competent lawyer could reasonably have made that choice reasonable.

### d.  Category 9:

In his supplemental motion, Mr. Henthorn contends that during Mr. Truman's opening statement at trial, Mr. Truman made "bold predictions" that "blew up in his face." *See* ECF No. 167 at 36.  Specifically, Mr. Henthorn asserts that Mr. Truman promised to produce evidence that would explain to the jury why charges were filed against Mr. Henthorn and failed to do so. *Id.*  In his opening statement, Mr. Truman stated:

> Now, once Mr. Henthorn and Ranger Faherty get back to the trailhead, his friends are there, and they say, oh, my God, not again.  And Faherty says, what does that mean. Says, well, you know, he lost another wife in 1995.  Really?  And that's what causes this case to come here and to be where you are.

ECF No. 167 at 36.  However, at trial, one of the friends present at the trailhead after Toni

Henthorn's death, Mr. Barker, testified that neither he nor Mr. Tokarski, the other friend present

at the trailhead, had made such a statement.

Mr. Henthorn alleges that this deficiency was a result of a failure to properly investigate

what these witnesses would say at trial.  In assessing the reasonableness of an attorney's

investigation, a court must consider not only the quantum of evidence already known to counsel,

but also whether known evidence would lead a reasonable attorney to investigate further.  *See*

*Wiggins v. Smith*, 539 U.S. 510, 527 (2003).  Additionally, "counsel has a duty to make

reasonable investigations or to make a reasonable decision that makes particular investigations

unnecessary." *Strickland*, 466 U.S. at 691.  "In any ineffectiveness case, a particular decision

not to investigate must be directly assessed for reasonableness in all the circumstances, applying

a heavy measure of deference to counsel's judgments." *Id.*

During the evidentiary hearing, Mr. Truman explained his process of preparing for trial.

He testified that he hired investigators as part of his preparation for trial, and he relied on his

findings and his investigators' findings to create an opening statement.  He hired investigators to

interview potential witnesses to get an idea of what their testimony at trial might be.  Mr. Barker

was one of those people.  Mr. Truman testified that one of the investigators told him that either

Mr. Barker or Mr. Tokarski made the statement mentioned in Mr. Truman's opening statement.

Relying on his investigation, Mr. Truman stated that he believed that the testimony from Mr.

Barker and/or Mr. Tokarski would support the statements he made in his opening statement.

It is reasonable for a lawyer to rely on the reports of its hired investigators—the evidence

Mr. Truman discovered from his investigators would not lead a reasonable attorney to think he

needed to investigate further before asserting that the evidence would come in.  Mr. Truman

reasonably investigated these claims. He was not deficient in investigating Mr. Barker's alleged statement.

Mr. Henthorn also contends that Mr. Truman's opening statement at trial showed his unfamiliarity with critical discovery. *See* ECF No. 167 at 37. Specifically, Mr. Henthorn asserts that Mr. Truman's representation of anticipated evidence on the timing of the accident was not supported by the evidence. Mr. Truman stated:

> [H]e [Mr. Henthorn] looked down to his texts coming in from the nanny, she was gone. You'll find that the texts came in at 5:51 . . . and you'll see that the 911 call came in less than a minute after that when Harold Henthorn called 911 and asked for help. He then scrambled down the mountain to get to his wife.

ECF No. 137 at 37.

Mr. Truman was placed in a difficult position; he had a client who made inconsistent statements regarding Toni Henthorn's death. Specifically, on the 911 call, Mr. Henthorn stated that he was with Toni. However, several contemporaneous text messages and statements made after Toni's death made it seem that Mr. Henthorn was not with Toni when he made the 911 call. Mr. Truman testified that he believed the timing of Mr. Henthorn's 911 call was a question of fact that the jury had to decide, because Mr. Henthorn was the only person present when Toni died and when the 911 call was made. Mr. Truman believed that his statement of the 911 call timing was consistent with at least some of the facts.

Given the circumstances, a reasonable attorney in Mr. Truman's shoes could have made the same decision. To mitigate Mr. Henthorn's lack of credibility, Mr. Truman attempted to convince the jury of the version of the 911 call timing that most supported Mr. Henthorn's version of events. Considering that deference accorded to strategic decisions of counsel under the *Strickland* framework, I cannot find his decision unreasonable.

2. <u>Exclusion of Mr. Henthorn from Participating in his Defense as Alleged in the Original Motion</u>

Mr. Henthorn also briefly alleged in the original motion that Mr. Truman's performance was deficient because he failed to meaningfully include him in his own defense at trial. He alleges that Mr. Truman asked that he not speak to him during the trial, and that he refused to request that the marshals provide him with a working pen. ECF No. 153 at 10–11. Mr. Truman testified that he did request that Mr. Henthorn not speak to him during the trial but only because he was hard of hearing, and that Mr. Henthorn should instead communicate to him by writing notes. He testified that he attempted to get him a working pen, but due to security measures, the marshals would only permit Mr. Henthorn to use a pen that they provided. Mr. Truman said that he urged the marshals to provide Mr. Henthorn with a working pen.

These actions are not deficient performance. They do not fall below the standard of care. Mr. Henthorn was still able to speak to other members of the defense team who could write Mr. Truman a note. Mr. Henthorn was still able to speak to Mr. Truman on breaks. He was still able to participate in his own defense, even if it was not on the terms that he would have preferred.

3. <u>Prejudice:</u>

Even if Mr. Henthorn had shown that Mr. Truman's performance was deficient, he has failed to show that any alleged deficiency prejudiced him. On this point, Mr. Henthorn argued at the hearing that the prejudice to him was cumulative error—while none of the alleged errors on its own necessarily would have changed the outcome of the proceeding, he argues that all the errors in conjunction with each other changed the outcome.

However, the Court lacks jurisdiction over the majority of errors raised in the supplemental motion. The limited set of alleged errors, even if I did find them to be deficient performance, do not amount to prejudice. The standard for finding prejudice is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different; put another way, it is a probability sufficient to undermine confidence in the outcome.  There was substantial, even overwhelming, evidence of Mr. Henthorn's guilt, fueled in significant part by Mr. Henthorn's inconsistent statements at the time of the incident.

I was the presiding judge at the trial, and although it was a memorable trial in many respects, I have reviewed the trial transcript as a check on, and to refresh, my memory.  Even if I had found that Mr. Truman's performance was deficient in some respects (which I have not), I find that there is not a reasonable probability that the outcome would have been different absent the alleged errors or that my confidence or that of a reasonable person in the outcome has been diminished.

## ORDER

1.  The government's motion to strike, found within ECF No. 171, is GRANTED IN PART AND DENIED IN PART.  It is granted as to categories 1, 2, 3, 5, 7, 10, 11, and 12 of defendant's supplemental motion (ECF No. 167).  It is also GRANTED in part as to category 4 on the failure to object to Detective Weaver's reenactments and category 6 as to the failure to ask certain questions during voir dire.  The Court does not have jurisdiction over these issues.  The motion is otherwise denied.

2.  Mr. Henthorn's motion to vacate (ECF No. 153) is DENIED.

3.  Mr. Henthorn's motion to supplement, ECF No. 167, is GRANTED IN PART AND DENIED IN PART.  It is granted to the extent that the Court grants leave to file the supplemental motion to hold an evidentiary hearing on ECF Nos. 153 and

167.  It is denied to the extent that it requested vacation of Mr. Henthorn's conviction.

4.     Under 28 U.S.C. § 2253(c)(1), "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from— . . . (B) the final order in a proceeding under section 2255."  Pursuant to 28 U.S.C. § 2253(c)(2), "[a] certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right."  Although reasonable minds could differ as to this Court's treatment of the jurisdictional issues raised in the government's motion to strike, I do not find that Mr. Henthorn has made a substantial showing that his representation by attorney Craig Truman was ineffective, i.e., I do not find that he was denied his Sixth Amendment right to effective assistance of counsel. Therefore, the Court does not issue a certificate of appealability.

DATED this day 23rd day of June, 2022.

BY THE COURT:

_____
R. Brooke Jackson
Senior United States District Judge